## SCHOOL DIST. NO. 79 v. SCHOOL DIST. NO. 78.

No. 26808.   April 13, 1937.

C. E. Thomas, for plaintiff in error.

W. F. Pardoe and Fred L. Patrick, for defendant in error.

PER CURIAM. This is an action commenced on July 18, 1934, by school district No. 78 of Creek county, state of Oklahoma, against school district No. 79 of Creek county, state of Oklahoma, seeking a writ of mandamus to compel the members of the board of said school district No. 79 to present an estimate for the sum of $1,500 to the excise board of Creek county, state of Oklahoma. The petition alleged that on the 15th day of June, 1932, the county superintendent of Creek county, Okla., one Alvin Hicks, made and entered an order as such county superintendent, dividing school district No. 1 of Creek county, state of Oklahoma, into school districts No. 78 and No. 79; that such order was made after a petition containing the signatures of more than one-third of the qualified electors residing in said school district No. 1 had been properly and duly filed with said county superintendent, and after all things had been done as required by the laws of the state of Oklahoma relating to the division of school districts. Plaintiff further alleges that after said division, the county superintendent of Creek county, state of Oklahoma, following the provisions of section 6785, O. S. 1931, determined the value at that time of the schoolhouses and all other property belonging to said school district No. 1, and determined that in order to adjust properly and equitably the affairs of said new districts in so far as school buildings and other property were concerned, said school district No. 79 should pay to school district No. 78 the sum of $1,500; that the school buildings, equipment and other property in school district No. 79 exceeded in value by more than $3,000 the value of the buildings, equipment, and other property in school district No. 78.

Plaintiff further alleged that it became the duty under section 6785, O. S. 1931, of the individual defendants, the members of the board of school district No. 79, to make and present an estimate to the excise board of Creek county, state of Oklahoma, requesting that a levy be made upon the property of school district No. 79 to pay for the assessment of $1,500 to said school district No. 78 in the same manner as if it had been levied for the purpose of paying off bonds regularly voted in school district No. 79 for the construction of a school building, but

that said school district No. 79 and the officers, including the defendants named, had neglected and refused to make provision for the payment of said indebtedness of $1,500 to said school district No. 78, and continued so to refuse. Plaintiff prayed for a writ of mandamus requiring said defendants and each of them to comply with their statutory duty in the premises, and to make and submit to the excise board of Creek county, state of Oklahoma, an estimate in which there was provided a levy for the payment of said $1,500 assessment from school district No. 79 to school district No. 78, in such manner as if the levy were being requested and made for the payment of bonds for the erection of a schoolhouse in said school district No. 79.

The defendants answered collectively, alleging that the acts and proceedings of the county superintendent of Creek county, state of Oklahoma, done and performed on the 15th day of June, 1932, wherein he attempted to disorganize and abandon school district No. 1 of Creek county, state of Oklahoma, and to form school districts No. 78 and No. 79 from the territory formerly embraced in school district No. 1, were void and wholly without force and effect; that the county superintendent never, at any time, acted in compliance with section 6785, O. S. 1931, or made any equitable division of said property between said school districts No. 78 and No. 79, and alleged the fact to be that said county superintendent, without any notice, appraisement or investigation of existing conditions and affairs between said districts, unlawfully, arbitrarily, unjustly, and inequitably attempted to assess said school district No. 79 with the sum of $1,500. Defendants further alleged that said attempted assessment was inequitable, unjust, and unfair, and was not made and determined as provided by law. Defendants further alleged that the plaintiff, school district No. 78, for the fiscal year 1932-1933, had an assessed valuation of $161,691, with a bonded and judgment indebtedness of approximately $5,500, and an enrollment of children each year not to exceed twelve pupils; that the defendant school district No. 79, for the fiscal year 1932-1933, had an assessed valuation of $124,941 with a bonded and judgment indebtedness of approximately $5,500, and an average school enrollment of 55 children; that the assessment of $1,500 against said school district No. 79 could only be used for the purpose of procuring a school building for said school district No. 78, and that it now had, and at all times has had, a school

building fully adequate for its needs; that such school building was received from the old school district No. 1 at the time of the division of said school district, and was fully paid for and in a good state of repair. Defendants further contended that section 6785, O. S. 1931, is unconstitutional and void for various reasons not here necessary to consider because not argued at the time of the trial or in their brief.

Alternative writ of mandamus was issued, and a trial was had upon the issues thus made up on August 6, 1934, resulting in a demurrer being sustained to the allegations of the petition. Motion for new trial was duly filed and a hearing had on the same on January 10, 1935, at which time the court sustained said motion for new trial and set the cause for final hearing on April 24, 1935. A trial was had on that date resulting in a judgment for the plaintiff, and ordering school district No. 79 to pay to school district No. 78 the sum of $1,500. A motion for new trial was duly filed, and from an order overruling the same this appeal is prosecuted.

The statute involved in this case is section 6785 O. S. 1931, which reads as follows:

"When a new district is formed, in whole or in part, from one or more districts possessing a schoolhouse or entitled to other property, the county superintendent of public instruction, at the time of forming such new district, shall equitably determine the proportion of the present value of such schoolhouses or other property justly due to said new district. Such proportion, when ascertained shall be levied upon the property of the district retaining the schoolhouse or other property and shall be collected in the same manner as if the same had been authorized by a vote of the district for building a schoolhouse, and, when collected, shall be paid to the new district to be applied towards procuring a schoolhouse for such district."

Plaintiff in error contends that the above section of our statute does not apply to a situation as in the case at bar, inasmuch as there is no wording in the statute to bring it to apply upon a case where one school district is divided into two school districts, both of said new school districts having schoolhouses which were formerly in the old district; that the obvious intent of the Legislature in passing section 6785, O. S. 1931, was that it should apply only to those cases where two school districts are created from one old district, one of the new districts retaining the old district's single schoolhouse, and it being necessary for the county superintendent to make an equitable and proportionate levy against the members of the school district retaining the old schoolhouse in order to provide funds to build a new schoolhouse in the new district, which then had none. The evident theory of this operation being that the citizens of the newly created school district, which does not have a schoolhouse, had, in years past, paid taxes for the erection and maintenance of the schoolhouse in the old district, and that they were, therefore, equitably entitled to an adjustment with those taxpayers in the new district which retained the schoolhouse to the construction of which they had contributed in years past.

The further contention of the plaintiff in error is that although the county superintendent of Creek county, Okla., made his order dividing the old school district of Creek county under date of June 15, 1932, yet no attempt was made to equitably adjust the properties of the two new districts until approximately one year later, or on July 8, 1933; that the county superintendent had, therefore, lost jurisdiction through lapse of time to make his order of July 8, 1933, and, further, that the county superintendent did not possess himself of sufficient information to equitably make such division as is contemplated by said section 6785, O. S. 1931, in that he failed to ascertain from the tax rolls of Creek county, Okla., the proportionate part paid by the people comprising each district towards the erection of the school buildings of the old district, and thus ascertain which new district had contributed the most toward such buildings in relation to the new division of the assets of the old district.

There appear to be no cases in point involving a construction of section 6785, O. S. 1931. We believe, however, that the statute in question is broad enough to cover the facts of this case. The Legislature saw fit to use the plural term, "schoolhouses or other property," and a situation such as the present one must have been within the legislative intendment at the time of the passage of the act. To argue that the act only applied to those cases where one of the new school districts took the only schoolhouse in the old district, would, obviously, make one wonder why the Legislature had used the plural terms quoted. We see no ambiguity in the language used in the act.

Counsel for the plaintiff in error next urge that the county superintendent had

lost jurisdiction to make an equitable distribution of the property of the two school districts, inasmuch as the order creating the two new school districts was made on June 15, 1932, and the county superintendent did not make a division of the property until July 8, 1933. It would appear that in this case the county superintendent had waited a considerable time before performing his duties under the statute, but nothing appears in the record to show that school district No. 79 was prejudiced thereby, and the statute prescribes no set time. The Legislature saw fit to delegate this discretionary power of property apportionment to the county superintendent of public instruction, and in the absence of a showing of an abuse of that discretion it must be presumed that he was acting equitably and fairly for all concerned.

It is contended that the county superintendent of public instruction did not possess himself of sufficient information to equitably make such division as is contemplated by section 6785, O. S. 1931. This is an equity case, and we have therefore reviewed the evidence thoroughly. The evidence is that the county superintendent did not take into consideration the assessed valuation of the two new school districts in making the division of properties, and counsel contends that no equitable distribution was therefore had. Nothing appears in the language of the statute which can be interpreted to make such a requirement. The statute says that the county superintendent of public instruction "shall equitably determine the proportion of the present value of such schoolhouses or other property justly due to said new district. * * *" The evidence is that the county superintendent had a man to assist him from the Department of Schoolhouse Planning of the State Department of Education, and that together they investigated and determined how much more the improvements in school district No. 79 were worth over and above the value of the schoolhouse and improvements in school district No. 78. The method of determining such equitable distribution of the assets is a discretionary power vested in the county superintendent of public instruction by our Legislature, and in the absence of a sufficient showing of an abuse of that power his acts are valid.

There appears to be ample competent evidence to sustain the judgment of the trial court, and the same is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys E. S. Champlin, C. F. Dyer, and A. L. Zinser in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Champlin and approved by Mr. Dyer and Mr. Zinser, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

OSBORN, C. J., and RILEY, PHELPS, CORN, and HURST, JJ., concur.